UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LESLIE S. GURNEA,

       Plaintiff,

       v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

Civil No. 07-6166-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

    Plaintiff Leslie S. Gurnea seeks judicial review of a final decision by defendant Commissioner denying plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) payments. This court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is reversed and remanded for further proceedings.

**<u>STANDARDS</u>**

1- OPINION AND ORDER

To establish eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits because of disability. 20 C.F.R. §§ 404.1520, 416.920; *see also Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

First, the Commissioner determines whether the claimant is engaged in SGA. If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to a second step and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. § 404.1520(a). If the claimant lacks this kind of impairment, disability benefits are denied. 20 C.F.R. § 404.1520(c).

If at least some of the claimant's impairments are severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one or more impairments that the Commissioner has recognized to be so severe that they are presumed to preclude SGA. *See* 20 C.F.R. § 404.1520(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments or the Listings). The Listings describe, for each of the major body systems, impairments which qualify as severe enough to be construed as *per se* disabling. 20 C.F.R. §§ 404.1525, 416.925; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The claimant has the burden of producing medical evidence that establishes all of the requisite medical findings. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir.

2005). If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling, the Commissioner determines the claimant's residual functional capacity (RFC). A person's RFC is the most he or she could do in a work setting despite the total limiting effects of the claimant's impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); Social Security Ruling (SSR) 96-8p.

The Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past. If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied. *See* 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her RFC, age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four. Accordingly, the claimant bears the initial burden of establishing his or her disability.

However, at the fifth step, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act. 20 C.F.R. § 404.1520(f)(1). If the Commissioner

meets this burden, the claimant must be deemed not disabled for purposes of determining benefits eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett*, 180 F.3d at 1097; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). The Commissioner's denial of benefits is upheld even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the administrative law judge (ALJ). *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *Andrews*, 53 F.3d at 1039-40.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098. The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998).

However, a decision supported by substantial evidence still must be set aside if the Commissioner did not apply the proper legal standards in weighing the evidence and making the decision. *Reddick*, 157 F.3d at 720-21.

## BACKGROUND

The relevant background has been presented thoroughly by the parties and in the ALJ's decision. Plaintiff was forty-eight years old at the time the ALJ rendered the decision. Plaintiff

did not complete high school, but has earned a general equivalency diploma (GED). She has past work experience as a road roller operator, parts clerk, home attendant, and inventory clerk.

Plaintiff applied for DIB and SSI on May 7, 2003. She alleged that her disability began on November 20, 2001. This application was denied initially and upon reconsideration. On June 27, 2005, the ALJ held a hearing and heard testimony from plaintiff and vocational expert (VE) Mark McGowan. On June 27, 2006, the ALJ issued an unfavorable decision, denying plaintiff's applications. This decision became the Commissioner's final decision upon the Appeals Council's denial of review. *See* 20 C.F.R. §§ 404.981, 416.1481, 422.210. Plaintiff seeks judicial review of this decision. Specific medical facts and background will be addressed as required by the parties' legal arguments.

## SUMMARY OF THE ALJ'S FINDINGS

At Step One of the five-step analysis used by the Commissioner, the ALJ found that plaintiff had not engaged in SGA since the alleged onset of her disability. Transcript of Record (hereinafter "Tr.") 22, Finding 2.

At Step Two, the ALJ found that plaintiff had severe impairments, including a history of severe osteoarthritis of her right knee; cervical spondylosis with nerve root impingement and disc herniation; moderate chronic obstructive pulmonary disease; foot pain; carpal tunnel syndrome; coronary artery disease; and moderate depression. Tr. 22, Finding 3.

At Step Three, the ALJ found that plaintiff's impairments, individually and in combination, did not meet or equal the requirements of a listed impairment. Tr. 22, Finding 4.

At Step Four, the ALJ found that plaintiff was unable to perform her past relevant work. Tr. 20. The ALJ so found after determining that plaintiff had the RFC to stand and walk for

thirty to forty-five minutes at a time for a total of two hours in an eight-hour workday; sit for three hours at a time and a total of six hours per eight-hour workday; lift and carry less than ten pounds at any time; and could balance and stop frequently and occasionally kneel, crouch, crawl, and climb.  Tr. 22, Finding 6.  Additionally, the ALJ determined that plaintiff should avoid overhead reaching with either arm, even moderate exposure to dust/fumes, and any exposure to hazards such as moving equipment and unprotected heights.  *Id.*  Plaintiff needed a sit/stand option due to pain and was limited to simple, unskilled tasks.  *Id.*

At Step Five, applying the Medical-Vocational Guidelines as a framework, and based on testimony from the VE, the ALJ found that plaintiff was able to perform jobs that exist in significant numbers in the national economy, including surveillance systems monitor, information clerk, and food and beverage clerk.  Tr. 23, Finding 11.

## DISCUSSION

Plaintiff contends that this court should reverse the Commissioner's final decision and remand for payment of benefits, or, in the alternative, remand for further consideration of the evidence because: (1) the ALJ improperly treated the lay testimony of Ben Johnson; (2) the ALJ failed to give clear and convincing reasons for rejecting plaintiff's testimony; and (3) the ALJ improperly determined that plaintiff retains the ability to perform jobs that exist in significant numbers in the national economy.

### 1.     Lay Witness Testimony

Plaintiff argues that the ALJ erred in failing to address the opinion of Ben Johnson, a physician's assistant.  Johnson treated plaintiff over several years and in 2005 opined that "there is no way for the foreseeable future that I anticipate [plaintiff] is going to be able to enter the

6- OPINION AND ORDER

work force." Tr. 246. On appeal, plaintiff argues that "Johnson's opinion had special importance and should have been considered." Pl.'s Br. in Supp. of Compl. for Review at 19.

Although a physician's assistant is not an "acceptable medical source," his or her opinion is entitled to consideration as an "other source." 20 C.F.R. § 404.1513(d)(1), SSR 06-03p. Under Social Security regulations, the adjudicator of a disability claim must consider the opinions of other medical sources and "generally should explain the weight given to [such] opinions . . . or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, *see Quang Van Han*, 882 F.2d at 1457 (acknowledging that "Social Security Rulings do not have the force of law" but that courts "defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the Act or regulations").

It is clear that the ALJ considered the lay witness statements of Johnson. Johnson is mentioned twice by name in the ALJ's decision. More importantly, the ALJ indicated that treatment notes of the Park Street Clinic, where Johnson worked, "show severe medical problems incorporated into the sedentary RFC" assigned to plaintiff. Tr. 19.

The ALJ not only considered Johnson's observations of plaintiff but credited his treatment notes. The majority of Johnson's treatment notes concern plaintiff's breathing problems and chest pain. Tr. 255, 259-60, 266, 270, 282-3, 288. The ALJ, noting plaintiff's need for environmental precautions, constructed an RFC that restricted plaintiff from "even moderate exposure to dust/fumes." Tr. 22. However, the ALJ concluded that Johnson's treatment notes did not establish "restrictions from all work activity." Tr. 19.

7- OPINION AND ORDER

The ALJ fulfilled her duty to consider the opinion of Johnson. Even the opinion of a treating physician "is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989)). Given Johnson's status as an "other source," the ALJ was not required to give specific reasons for rejecting Johnson's opinion concerning plaintiff's ability to work. *Cf. Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (clear and convincing reasons must be provided to support rejection of a treating physician's ultimate conclusions). The ALJ discussed the medical observations of Johnson and, accordingly, assigned plaintiff a restricted RFC. The ALJ, however, disagreed that these impairments prevented plaintiff from entering the work force.

Having given proper consideration to the lay witness statements of Johnson, the ALJ was entitled to disregard his opinion concerning the ultimate determination of disability. Plaintiff's objections to the ALJ's findings in this regard are rejected.

**2.      Plaintiff's Testimony**

Plaintiff also argues that the ALJ improperly found plaintiff's testimony less than credible. Specifically, plaintiff faults the ALJ for ignoring plaintiff's testimony that she needed to lie down three times a day, thirty to forty-five minutes at a time, in the six months before the hearing. Pl.'s Br. in Supp. of Compl. for Review at 17, Tr. 441.

If an ALJ finds that a claimant's testimony relating to limitations is unreliable, the ALJ must make a credibility determination citing the reasons why that testimony is unpersuasive. *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). The ALJ must identify specifically what

testimony is credible and what testimony undermines the claimant's complaints. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Under the test laid out in *Cotton v. Bowen*, a claimant who alleges disability based on subjective symptoms must meet two prongs. 799 F.2d 1407 (9th Cir. 1986). The first prong requires that the claimant "produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged . . . .'" *Bunnell*, 947 F.2d at 344 (quoting 42 U.S.C. § 423(d)(5)(A) (1988)); *see also Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996).

Second, the claimant must show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Smolen*, 80 F.3d at 1282. Notably, this evidence need not establish that the impairments caused the symptom or the severity of it as alleged by the claimant.

> Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon. Finally, the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. This approach reflects the highly subjective and idiosyncratic nature of pain and other such symptoms . . . . Thus, the ALJ may not reject subjective symptom testimony under the *Cotton* analysis simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged.

*Id.* (citation omitted) (emphasis in original).

When a plaintiff has met the burden of showing that his or her impairment or combination of impairments could reasonably be expected to produce some degree of the symptoms described by the plaintiff's testimony, and there is no evidence suggesting that the

9- OPINION AND ORDER

plaintiff is malingering, the ALJ may not reject testimony regarding the severity of plaintiff's symptoms unless there are clear and convincing reasons for doing so. *Id*. at 1283; *see also Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony. *Tonapetyan*, 242 F.3d at 1148. Medical evidence is a "relevant factor" in determining the severity of a claimant's pain and its effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Other factors relevant to the ALJ's credibility determination include: a plaintiff's daily activities; the location, duration, frequency, and intensity of his or her symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment (other than medication); measures used to relieve symptoms; and functional limitations caused by the symptoms. *See Smolen*, 80 F.3d at 1284; *see also* 20 C.F.R. § 404.1529(c)(3).

The ALJ's evaluation of plaintiff's credibility did not meet these standards. At the hearing, the VE testified that plaintiff could not perform any jobs if she needed to lie down up to forty-five minutes, three times a day. Tr. 458. By concluding that plaintiff was able to perform jobs that exist in significant numbers in the national economy, the ALJ implicitly rejected plaintiff's testimony that she needed to lie down several times a day.

The ALJ identified two reasons for assigning an RFC "somewhat broader than [plaintiff] claims to be able to perform in her written submissions and testimony." Tr. 20. First, the ALJ noted that plaintiff emphasized "fatigue, chronic pain, and limited mobility as reasons for leaving her past work." *Id.* Subsequent to the alleged disability onset date, plaintiff worked at a motel,

"which is physically and environmentally more demanding than the jobs" assigned by the VE at step five. *Id.*  Second, the ALJ indicated that plaintiff's daily activities were inconsistent with her reported symptoms.  The ALJ observed that plaintiff "uses her hands regularly in sedentary activities such as sewing, despite complaints of carpal tunnel condition." *Id.*  Furthermore, the ALJ noted that plaintiff occasionally drives a car and spends fifteen hours a week doing light housework, including washing dishes and preparing meals.  Tr. 17-18.

This court concludes that the ALJ did not provide clear and convincing reasons for rejecting plaintiff's testimony.  Although plaintiff worked for a month at a motel, she reported that the job's "physical demands were too much for her."  Tr. 382.  The Ninth Circuit has observed that

> [i]t does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed*, that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment.  Indeed, we have suggested that similar evidence that a claimant tried to work and failed actually *supported* his allegations of disabling pain.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) (emphasis in original).  Considering its brief duration and description by plaintiff, plaintiff's attempt to work at the motel does not provide a clear and convincing reason for rejecting her testimony.

Similarly, plaintiff's daily activities do not provide clear and convincing reasons for rejecting plaintiff's testimony.  "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility

as to her overall disability."  *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001).  Rather,

11- OPINION AND ORDER

daily activities detract from a plaintiff's credibility if they contradict other testimony or demonstrate skills that could be transferred to the workplace. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Other than plaintiff's carpal tunnel syndrome, the ALJ did not identify how plaintiff's daily activities were inconsistent with her alleged symptoms. None of the activities that the ALJ cited in its credibility determination – including spending fifteen hours a week doing light housework – is inconsistent with plaintiff's alleged need to lie down several times a day. Moreover, the Social Security Act "does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (citations omitted). At the hearing, the VE testified that no jobs would allow plaintiff to lie down for up to forty-five minutes, three times a day. It remains unclear whether plaintiff's activities either contradict her other testimony or demonstrate an ability to maintain employment.

Whether to remand for further proceedings or for payment of benefits is a matter of judicial discretion. *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000). A remand for further proceedings is unnecessary if the record is fully developed and it is clear from the record that the ALJ would be required to award benefits. *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). The rule recognizes "the importance of expediting disability claims." *Id*. In cases in which it is evident from the record that benefits should be awarded, remanding for further proceedings would delay effectuating the primary purpose of the Social Security Act, which is to

12- OPINION AND ORDER

give financial assistance to disabled persons because they cannot sustain themselves. *Id*.

The decision whether to remand for further proceedings turns upon the likely utility of such proceedings. *Harman*, 211 F.3d at 1179. In this matter, this court concludes that outstanding issues remain that must be resolved before a determination of disability can be made. On remand, the ALJ shall assess plaintiff's testimony, and provide adequate explanations establishing that plaintiff's testimony was considered in accordance with all applicable standards and laws, and fully evaluated in the assessment of plaintiff's possible eligibility for benefits. Specifically, pursuant to this remand, the ALJ "must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints." *Burch*, 400 F.3d at 680. `The ALJ shall further develop the record regarding plaintiff's credibility and address plaintiff's stated need to lie down several times a day.

### 3. Step Five

Plaintiff asserts that the ALJ improperly disregarded limitations at the fifth step and has relied, therefore, on an invalid RFC. Since this case will be remanded for further consideration of claimant's credibility, discussion of this issue would be premature.

### **CONCLUSION**

This court concludes that outstanding issues must be resolved before a determination of disability can be made. Further proceedings will be useful, and I exercise the discretion of the court to remand this case for additional administrative proceedings addressing plaintiff's symptom testimony.

For the reasons provided, this court concludes that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner must be REVERSED and REMANDED FOR FURTHER PROCEEDINGS consistent with this Opinion and the parameters provided herein.

IT IS SO ORDERED.

DATED this  7   day of October, 2008.

                                          /s/ ANCER L. HAGGERTY  
                                          ANCER L. HAGGERTY  
                                          United States District Judge